IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAIANN RILEY,** | : | CIVIL ACTION NO. 1:23-CV-1834 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **KOHAN RETAIL INVESTMENT GROUP d/b/a COLONIAL PARK MALL,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Shaiann Riley brings this employment discrimination case against her former employer, defendant Kohan Retail Investment Group, doing business as Colonial Park Mall ("Kohan"). She seeks back pay and compensatory and punitive damages. The Clerk of Court has entered default against Kohan, and Riley now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and for reasonable attorneys' fees and costs. We have conducted an evidentiary hearing on the matter, and we will grant Riley's motions and award her certain requested relief.

**I.      Factual Background & Procedural History**[1]

Kohan is an investment group headquartered in Great Neck, New York, that owns and operates physical retail spaces across the country. (See Doc. 1 ¶ 7). One

---

[1] The following factual recitation is drawn from the allegations in Riley's uncontested complaint (Doc. 1) and the testimony of Riley and her mother, Sherease Riley, adduced at an evidentiary hearing on May 8, 2024, (see Doc. 13, 5/8/24 Hr'g Tr.).

of its properties is the Colonial Park Mall in Harrisburg, Pennsylvania. (See id.) In March 2020, Kohan hired Riley, an African American woman and recent college graduate, as the mall's marketing director. (See id. ¶¶ 10-12). Kohan paid her $16 per hour. (See 5/13/24 Hr'g Tr. 12:17-19). Riley's direct supervisor was Chris Restagno. (See id. at 5:24-6:11). Restagno, in turn, reported to the general manager, who happened to be Riley's mother, Sherease. (See id. at 25:5-17; see also Doc. 1 ¶ 13). Sherease, who describes herself as being of mixed race, began working at Kohan in 2017. (See Doc. 1 ¶ 13; see also 5/13/24 Hr'g Tr. 28:4-19). She reported directly to Kohan's founder and namesake, Mike Kohan. (See 5/13/24 Hr'g Tr. 28:12-17); see also Times-Republican, *Mall ownership group has checkered history*, https://www.timesrepublican.com/news/todays-news/2023/11/mall-ownership-group-has-checkered-history/, archived at https://perma.cc/8E93-FPYY (last visited May 16, 2024) (noting Kohan is "led by founder Mehran Kohansieh, who goes by the name Mike Kohan").

Throughout Riley's employment with Kohan, she observed and personally experienced numerous instances of racial discrimination. (See Doc. 1 ¶ 15). For example, Kohan inexplicably terminated the majority of its African American employees and replaced them with less-qualified Caucasian employees. (See id. ¶ 16(i)-(iii)). The company treated African American employees differently and worse than their non-Black coworkers. (See id. ¶ 16(v)). When tenants at the mall referred to Sherease as a "black bitch," Kohan management "did nothing to correct the situation." (See id. ¶ 16(iv); see also 5/8/24 Hr'g Tr. 7:6-21 (identifying "Ozzie" as Kohan's employee who made such remarks in Riley's presence)). And Kohan paid

2

African American employees, including Riley and her mother, less than Caucasian employees. (See Doc. 1 ¶ 16(vi); see also 5/8/24 Hr'g Tr. 30:18-33:14 (Sherease explaining that Kohan approved all raises and refused to give her or any other Black employee a raise during her four years of employment)).

Riley also was subjected to unwanted sexual advances and sexually inappropriate comments in the workplace. (See Doc. 1 ¶ 18; 5/8/24 Hr'g Tr. 9:13-25). Her coworker, D.J., repeatedly followed and attempted to hug her without her consent while she was alone. (See Doc. 1 ¶ 18; 5/8/24 Hr'g Tr. 23:12-24:7). Another coworker, Harrison Heckard, frequently directed misogynistic remarks at Riley, such as commenting on her skirt length and telling her to bend over. (See 5/8/24 Hr'g Tr. 24:8-25:4). Sherease eventually terminated Heckard because of his inappropriate behavior. (See id. at 30:1-7). But apart from that rare example of discipline, Kohan's response to the discrimination and harassment was nonexistent. (See id. at 9:7-9, 10:7-12).

The ongoing and systemic issues at Kohan led Sherease to resign in October 2021. (See id. at 33:8-34:4). Shortly thereafter, Riley took a more active role in raising her concerns with Kohan's management. (See Doc. 1 ¶ 17; 5/8/24 Hr'g Tr. 7:23-8:18). She called Veronica Kohan, a member of Kohan's management team, and informed her about the ongoing racial discrimination and sexual harassment. (See 5/8/24 Hr'g Tr. 7:23-10:12, 25:18-26:10; see also id. at 32:1-4 (Sherease explaining that Veronica is a regional manager located in Texas)). Riley's complaint was met with indifference; Veronica callously responded that Kohan is "an equal opportunity employer." (See Doc. 1 ¶ 19; see also 5/8/24 Hr'g Tr. 25:22-26:16). No

3

one at Kohan ever investigated Riley's complaints or followed-up with her. (See Doc. 1 ¶¶ 19, 26, 32; 5/8/24 Hr'g Tr. 26:1-16). Instead, Kohan terminated Riley a few days later, on November 3, 2021. (See Doc. 1 ¶¶ 14, 20; 5/8/24 Hr'g Tr. 10:1-15, 26:11-16). There is no evidence that Kohan had a non-retaliatory reason to terminate Riley. (See Doc. 1 ¶¶ 21-23; 5/8/24 Hr'g Tr. 11:5-12:16, 34:13-20).

Riley's abrupt termination significantly disrupted her life, as her emotional testimony and earnest demeanor at the hearing in this matter plainly demonstrated. (See, e.g., 5/8/24 Hr'g Tr. 22:12-14). In an instant, she went from earning an annual salary of $33,280 to nothing. (See id. at 12:17-24).[2] Although Riley immediately began cold-calling potential employers and submitting hundreds of job applications via Indeed and directly through company websites, she was unable to secure employment for over two months. (See id. at 12:25-14:24 (referencing Ex. 2)). When she did eventually find a job with David's Bridal in January 2022, the salary was not enough for her to continue paying her living expenses in Harrisburg. (See id. at 22:1-23:5; see also id. at 15:6-8, 38:16-39:15). Riley's financial challenges forced her to leave Harrisburg and move in with her mother in Baltimore. (See id. at 15:6-19).

The rejections and lack of progress has taken a significant toll on Riley. (See id. at 22:1-23:5). She has suffered from stress, anxiety, humiliation, and embarrassment ever since her termination. (See Doc. 1 at 7; 5/8/24 Hr'g Tr. 22:1-23:5). Her initial diagnosis of depression was upgraded to major depressive

---

[2] Riley earned $16 per hour and worked 40 hours per week, resulting in a weekly wage of $640. (See 5/8/24 Hr'g Tr. 12:17-22). This amounts to $33,280 over the course of 52 weeks.

4

disorder.  (See id. at 22:1-23:5).  At her lowest point, she contemplated suicide.  (See id.; see also id. at 34:21-35:20).  But Riley's persistence and determination eventually paid off.  After moving to Baltimore in 2022, she secured employment with Bella's Bridesmaids.  (See id. at 15:18-16:8).  She earned a total of $1,954 that year.  (See Doc. 10-4 at 1).  In 2023, she joined Kipp Baltimore, Inc., earning a total of $14,154.66.  (See 5/8/24 Hr'g Tr. 17:24-18:1; Doc. 10-5 at 1).  And in January 2024, Penn State Health hired Riley and offered her a higher salary than what she made at Kohan.  (See 5/8/24 Hr'g Tr. 18:19-19:1, 20:2-8; Doc. 10-6).

Riley filed her complaint against Kohan on November 3, 2023.  Kohan failed to answer or otherwise respond to the complaint.  As a result, the Clerk of Court entered default against Kohan on January 23, 2024.  Riley filed a motion for default judgment and the court held an evidentiary hearing to assess damages on May 8, 2024.  Kohan did not respond to the motion or appear at the hearing.  The motion is ripe for disposition.

**II.    Discussion**

Federal Rule of Civil Procedure 55 governs default judgments.  See FED. R. CIV. P. 55.  Once default has been sought and entered in accordance with Rule 55(a), the non-defaulting party may move for default judgment pursuant to Rule 55(b). See FED. R. CIV. P. 55(a), (b)(2).  The court is entitled to take the facts in the operative pleading—except those pertaining to damages—to be true for purposes of resolving the motion.  See DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)); 10A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE

5

§ 2688.1 (4th ed. 2018) (citing, *inter alia*, Comdyne I, 908 F.2d 1142). A district court evaluating a motion for default judgment must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).³ Whether to enter default judgment is left to the sound discretion of the district court. See id.

---

³ In Chamberlain, the panel cited to United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984), for the proposition that these "[t]hree factors control whether a default judgment should be granted." Chamberlain, 210 F.3d at 164 (citing $55,518.05 in U.S. Currency, 728 F.2d at 195). That decision, however, and all other decisions cited therein were examining whether to *set aside* an entry of default or default judgment, not whether to *enter* default judgment. See $55,518.05 in U.S. Currency, 728 F.2d at 195 (motion to set aside entry of default and default judgment) (citing Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 122 (3d Cir. 1983) (motion to set aside default judgment); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir. 1982) (same); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982) (motion to set aside entry of default)). The Chamberlain decision does not explicitly acknowledge that it is extending the "set-aside" factors to a new and different context, nor does it express a rationale therefor. As one Third Circuit judge has observed, the actions of entering a default judgment and setting one aside are "clearly distinguishable," and the Chamberlain court "may have unwittingly imposed an unrealistic and misplaced burden on plaintiffs, and unduly constrained the discretion of district courts." Hill v. Williamsport Police Dep't, 69 F. App'x 49, 52-53 (3d Cir. 2003) (Rendell, J., concurring) (nonprecedential). We echo and fully agree with Judge Rendell's concerns. Common sense dictates that the burden of proffering a meritorious defense should fall upon the shoulders of a defendant who seeks to set aside a default; we see no justification for transposing that burden to a plaintiff seeking an entry of default judgment against a defendant who has failed to appear. Nonetheless, this court is bound by Chamberlain until and unless our court of appeals revisits the decision *en banc*. Id. at 52 (majority opinion) (observing the district court "of course had no choice" but to follow Chamberlain); see, e.g., GEICO v. Pennsauken Spine & Rehab P.C., No. 17-11727, 2018 WL 3727369, at *4 n.1 (D.N.J. Aug. 6, 2018).

6

**A.     Merits**

Riley alleges that Kohan discriminated against her because of her race and retaliated against her when she complained of the discrimination and separate incidences of sexual harassment.  A claim of racial discrimination requires a plaintiff to show that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) her employer sought out similarly qualified individuals to replace her under circumstances that raise an inference of discriminatory action.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (*per curiam*) (citing, *inter alia*, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  A retaliation claim requires a plaintiff to demonstrate that (1) she engaged in a protected activity; (2) she was subject to an adverse action after engaging in that activity; and (3) there is a causal link between the protected activity and the adverse action.  See id. at 800 (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)).[4]

The unchallenged *allegata* in Riley's complaint, together with her confirming testimony, establish that Kohan racially discriminated against her, that she was the victim of sexual harassment committed by two of her coworkers, and that Kohan retaliated against her when she complained to management about her treatment in both respects.  (See Doc. 1 ¶¶ 9-23).  More specifically, the uncontested allegations and testimony of Riley and her mother—which we find highly credible—

---

[4] Our court of appeals has held that the legal standards for Section 1981 and Title VII cases are the same.  See Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1115 & n.9 (3d Cir. 1988) (citation omitted).

demonstrate that (1) Riley was qualified for her position; (2) Kohan underpaid, mistreated, and replaced African American employees with less-qualified Caucasian employees; (3) Riley was subject to sexual harassment in the workplace by two other Kohan employees, D.J. and Harrison Heckard; (4) when Riley complained to management about the discrimination and harassment, Kohan failed to conduct an investigation; and (5) Kohan terminated Riley days later because of her complaints and without cause.  (See Doc. 1 (Counts I-III); see generally 5/8/24 Hr'g Tr.).

As for the Chamberlain factors, all three factors weigh in favor of the plaintiff. Riley undoubtedly will be prejudiced if default judgment is denied insofar as Kohan caused her monetary and emotional harm for which she is entitled to compensation. Kohan's failure to plead or otherwise defend makes it difficult to determine whether it has a litigable defense, though none appears on the face of the complaint. And given Kohan's failure to respond to the complaint and motion for default judgment and to appear at the evidentiary hearing despite being notified, its decision not to plead or otherwise respond can only be attributed to the defendant's culpable conduct.  Accordingly, we find that entry of default judgment against Kohan is appropriate.

**B.    Damages**

Riley seeks back pay, compensatory damages for emotional distress, and punitive damages for Kohan's reckless indifference to her federally protected rights.  When the damages sought in default are not a sum-certain, the court must carefully assess the amount of damages to which a plaintiff is entitled.  See FED. R.

CIV. P. 55(b)(2)(B). The court may accept affidavits or hold an evidentiary hearing to make this determination. See id.; Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994). Having held an evidentiary hearing in this matter, we address Riley's requested damages *seriatim*.

        **1.**    ***Back Pay***

Riley's first request for damages is in the form of back pay, one of the equitable remedies available to a prevailing plaintiff in a Title VII action. See Miller v. Tyco Elec., Ltd., No. 1:10-CV-2479, 2012 WL 5509710, at *3 (M.D. Pa. Nov. 14, 2012) (citing Eshelman v. Agere Sys., Inc., 554 F.3d 426, 440 (3d Cir. 2009)); Gunby, 840 F.2d at 1119. The purpose of back pay is "to make victims of unlawful discrimination whole by restoring them to the position they would have been in absent the discrimination." See Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 84 (3d Cir. 2009) (citing Loeffler v. Frank, 486 U.S. 549, 558 (1988)). Courts calculate back pay by subtracting actual wages earned from what the individual would have earned had they not been unlawfully terminated. See Gunby, 840 F.2d at 1119-20 (citing E.E.O.C. v. Eazor Exp. Co., 499 F. Supp. 1377, 1388 (W.D. Pa. 1980), aff'd, 659 F.2d 1066 (3d Cir. 1981) (unpublished table decision)). The entitlement to back pay ends once a plaintiff finds new employment that is equivalent to or better than her previous position. See Donlin, 581 F.3d at 84 (citing Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 236 (1982)).

In the matter *sub judice*, Kohan paid Riley an annual salary of $33,280. (See 5/8/24 Hr'g Tr. 12:17-24). She was unlawfully deprived of that salary for two years, three months, and nine days (or 2.28 years)—from her termination on November 3,

2021, until her higher-paying employment began on February 12, 2024. (See Doc. 1 ¶ 14; Doc. 10-6). Multiplying her salary by the length of time she was either unemployed or worked for lower wages, Kohan would have owed Riley at least $75,878.40 if it had continued employing her at the same rate. The evidence presented at the hearing also demonstrates that Riley earned a total of $16,108.66 from other employment in 2022 ($1,954) and 2023 ($14,154.66). (See Doc. 10-4 at 1; Doc. 10-5 at 1). Thus, Riley is entitled to $59,769.74 in back pay, which equals the difference between those two amounts.

### 2.  *Compensatory Damages*

Riley next seeks compensatory damages due to her emotional distress. Title VII authorizes compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." See 42 U.S.C. § 1981a(b)(3). When a plaintiff seeks compensation for "mental distress" in particular, our court of appeals has held that they must put forth sufficient evidence of an "actual injury" due to the defendant's misconduct. See Gunby, 840 F.2d at 1121 (citing, *inter alia*, Carey v. Piphus, 435 U.S. 247 (1978)). However, a plaintiff need not present medical evidence or expert testimony to satisfy this requirement. See Bolden v. Se. Pa. Transp. Auth., 21 F.3d 29, 34 (3d Cir. 1994).

Riley has not requested a specific amount of compensatory damages. Nor has she provided the court with analogous caselaw to liken her circumstances to those of other plaintiffs who successfully brought discrimination or retaliation claims under Title VII and were awarded damages for emotional distress. She also

10

did not present any medical evidence or expert testimony to bolster her claims. Nonetheless, our research reveals that an award of between $5,000 and $35,000 is appropriate for "garden-variety emotional distress claims." See Sowell v. RAV Investigative & Sec. Servs., Ltd, No. 15-3657, 2016 WL 3014881, at *6 (E.D. Pa. May 26, 2016) (quoting Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 153 (E.D.N.Y. 2013) (collecting cases)); Hampton v. Prot. Plus Sec. Corp., No. 3:14-CV-6982, 2017 WL 714351, at *5 (D.N.J. Feb. 23, 2017) (awarding $10,000 where plaintiff testified that employer's racial discrimination caused him anxiety, depression, and fear); Thompson v. Cent. Sec. Agency, Inc., No. 98-2474, 1999 WL 126918, at *3 (E.D. Pa. Mar. 8, 1999) (awarding $10,000 where plaintiff testified that employer constructively terminated her after supervisor sexually harassed her, causing her to feel scared, embarrassed, and depressed); cf. Bugg v. Just Wing It, LLC, No. 1:18-CV-2399, 2020 WL 1675953, at *6 (M.D. Pa. Apr. 6, 2020) (awarding $20,000 where plaintiff-customer suffered racial discrimination that caused embarrassment and humiliation).

     In the instant matter, we find that an award at the upper end of the typical range for "garden-variety emotional distress claims" is appropriate. See Sowell, No. 15-3657, 2016 WL 3014881, at *6 (quoting Joseph, 970 F. Supp. 2d at 153). Riley testified that Kohan caused her intense emotional pain, suffering, and mental anguish. (See 5/8/24 Hr'g Tr. 22:1-23:5, 34:21-35:20). Following her unlawful termination, her psychiatrist upgraded her diagnosis of minor depression to major depressive disorder. (See id. at 22:5-8). Riley also was forced to relocate from Harrisburg to Baltimore because she could no longer afford her living expenses.

11

(See id. at 38:23-39:15). At one point during her testimony, Riley sobbed while explaining to the court how the cascading effects of Kohan's actions caused her to "stop[] wanting to live," tragic sentiments that her mother corroborated. (See id. at 22:14-15, 34:15-35:4). Riley emphasized that she is "still recovering" from this trauma: "Every day is still a struggle." (See id. at 22:12-24). Based on the credible testimony presented by Riley and her mother regarding the mental anguish, stress, and anxiety that Kohan's actions have caused her, we will award Riley $35,000 in emotional distress damages.

### 3. *Punitive Damages*

In her penultimate request, Riley seeks punitive damages. Title VII permits punitive damages only if the employer engaged in discriminatory conduct with malice or reckless indifference. See 42 U.S.C. § 1981a(b)(1). A plaintiff must show that the employer knew it may be violating federal law or that it was recklessly indifferent to the plaintiff's federally protected rights; a mere showing that the employer was aware of the discrimination is insufficient. See Kant v. Seton Hall Univ., 279 F. App'x 152, 158 (3d Cir. 2008) (nonprecedential) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999)). In other words, punitive damages are only appropriate when "the defendant's conduct amounts to something more than a bare violation justifying compensatory damages." See Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978). If punitive damages are appropriate, the court may consider evidence of a defendant's assets, net worth, and financial condition when determining an award amount. See Johnson v. Fed. Express Corp., No. 1:12-CV-

444, 2014 WL 805995, at * 12 (M.D. Pa. Feb. 28, 2014) (Conner, C.J.) (citing, *inter alia*, Forsyth v. Kleindienst, 700 F.2d 104, 106 (3d Cir. 1983)).

We find that Riley is entitled to punitive damages. As an initial matter, Riley has clearly demonstrated that Kohan was aware of the ongoing violations of her rights. (See 5/8/24 Hr'g Tr. 8:8-10:12, 32:23-33:7). Riley formally complained to Kohan's management about the harassment and discrimination, but no one investigated her concerns or followed up with her. (See id.) Instead, Kohan promptly terminated her without cause. (See id. at 10:13-15). This is enough to show reckless indifference. As to Kohan's assets and financial condition, Riley's mother testified that Kohan is still in business and owns and operates numerous retail spaces across the United States. (See id. at 32:5-20). After reviewing analogous cases, we find that an award of punitive damages equal to Riley's compensatory damages is appropriate. See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 188-89, 192 (3d Cir. 2007) (noting courts must consider the ratio of punitive damages to the "actual harm" inflicted on plaintiff) (citing, *inter alia*, BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580 (1996)); Bugg, 2020 WL 1675953, at *7 (finding one-to-one ratio appropriate); see also Reczek, 2008 WL 4723021, at *3 (awarding $60,000 in punitive damages—60% of compensatory damages—where management ignored multiple complaints of racial discrimination and harassment). We will award Riley $35,000 in punitive damages against Kohan.

### C.      Attorneys' Fees and Costs

Lastly, Riley seeks attorneys' fees and costs. Courts have discretion to award reasonable attorneys' fees in an employment discrimination case under Title VII. See 42 U.S.C. 2000e-5(k). Attorneys' fees are generally available when a civil rights plaintiff is the prevailing party and obtains the sought-after relief. See Sullivan v. Pa. Dep't of Lab. & Indus., Bureau of Vocational Rehab., 663 F.2d 443, 447 (3d Cir. 1981). Courts assess the reasonableness of a request for attorneys' fees by applying the lodestar formula, which multiplies the number of hours reasonably expended by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). To determine a reasonable hourly rate, courts assess the skill and experience of the attorneys and consider the prevailing rates in the community for lawyers of comparable skill, experience, and reputation. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 708 (3d Cir. 2005), as amended (Nov. 10, 2005).

Riley is entitled to the requested attorneys' fees and costs. She is the prevailing party because she obtained a default judgment in this employment discrimination case under Title VII. Riley seeks a total of $12,901.50 in attorneys' fees and $853.87 in costs. (See Doc. 14 ¶ 9). She has submitted affidavits and documents detailing how those fees and costs were calculated. (See Docs. 14-1 through 14-6). These exhibits also outline her attorneys' credentials. (See id.) In addition, Riley's lawyers have filed declarations stating that the rates charged are reasonable based on prevailing rates in the community. (See id.) We have reviewed these submissions and find that the fees requested are reasonable in light of each

14

attorney's experience, the nature of the services performed, and the rates charged by comparable counsel in the Middle District of Pennsylvania for similar services. We will grant Riley's request and award her $12,901.50 in attorneys' fees and $853.87 in costs.

### III. Conclusion

We will grant Riley's motion for default judgment and award her damages and relief as outlined above. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER  
Christopher C. Conner  
United States District Judge  
Middle District of Pennsylvania

Dated:   July 30, 2024